IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Allen L. Blackwell, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:16-2992-HMH-KFM |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Publix Super Markets, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of the United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Allen L. Blackwell ("Blackwell") alleges violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, for interfering with his rights and retaliatory discharge. Blackwell moved for partial summary judgment as to the interference cause of action on May 10, 2017. Defendant Publix Super Markets, Inc. ("Publix") filed a response in opposition on June 2, 2017, and Blackwell filed a reply on June 9, 2017. On June 2, 2017, Blackwell filed a motion for partial summary judgment as to Publix's after-acquired evidence defense. Publix filed a response in opposition on June 16, 2016, and Blackwell filed a reply on June 23, 2017. On June 2, 2017, Publix filed a motion for summary judgment. On June 16, 2017, Blackwell filed a response in opposition, and Publix

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

filed a reply on June 22, 2017. In his Report and Recommendation, Magistrate Judge McDonald recommends denying Blackwell's motion for partial summary judgment as to the FMLA interference claim, granting Publix's motion for summary judgment, and dismissing Blackwell's motion for partial summary judgment as to Publix's after-acquired evidence defense as moot. (R&R, ECF No. 56.)

I. FACTUAL AND PROCEDURAL HISTORY

Blackwell was hired by Publix on November 15, 2002, as a full-time grocery clerk. (Def. Mot. Summ. J. Ex. A (Pl. Dep. 18, 48), ECF No. 45-2.) Initially, Blackwell was assigned to work at Store No. 0613 in Simpsonville, South Carolina. (Id. Ex. A (Pl. Dep. 18, 48), ECF No. 45-2.) Over the next thirteen years of Blackwell's employment, he was transferred to several Publix stores in the upstate of South Carolina and worked for several different management teams. (Id. Ex. A (Pl. Dep. 19, 67-68, 75), ECF No. 45-2.) Blackwell was eventually assigned to the position of full-time grocery manager at Store No. 1012 in Mauldin, South Carolina. (Id. Ex. A (Pl. Dep. 9-10, 19), ECF No. 45-2.)

On July 10, 2015, Blackwell's mother delivered a doctor's note to Publix, excusing him from work for "chest pains." (Id. Ex. A (Ex. 10), ECF No. 45-2.) Blackwell's doctor's note requested FMLA leave from July 10, 2015 to July 20, 2015. (Def. Mot. Summ. J. Ex. A (Ex. 10), ECF No. 45-2.) Blackwell submitted a second doctor's note that requested leave through August 1, 2015. (Id. Ex. A (Ex. 11), ECF No. 45-2.) Blackwell called Publix for his work schedule and returned to work on August 2, 2015. (Id. Ex. A (Pl. Dep. 91, 93, 133), ECF No. 45-2.)

On the weekend of August 8-9, 2015, Blackwell fell from a ladder and injured his back. (Pl. Mot. Summ. J. Attach. 6 (Pl. Aff. ¶ 7), ECF No. 40-6.) Blackwell's back pain worsened and he went to the doctor on August 11, 2015. (Id. Attach. 6 (Pl. Aff. ¶¶ 8-9), ECF No. 40-6.) Blackwell returned to the doctor for treatment on August 24, August 27, September 8, and October 7, 2015. (Id. Attach. 6 (Pl. Aff. ¶ 9), ECF No. 40-6.) Blackwell testified that he was in serious pain during this time period and only able to engage in very limited physical activity. (Id. Attach. 6 (Pl. Aff. ¶ 10), ECF No. 40-6.)

Blackwell's mother delivered a series of doctor's notes to Publix requesting medical leave on Blackwell's behalf for the following dates:

1. August 11, 2015, through August 25, 2015;

2. August 24, 2015, through September 7, 2015;

3. September 7, 2015, through September 17, 2015;

4. September 16, 2015, through September 26, 2015; and

5. October 3, 2015, through November 1, 2015.

(Def. Mot. Summ. J. Ex. A (Exs. 11, 14, 16), ECF No. 45-2.) In addition, during the time that Blackwell was on leave, he used vacation time in September that did not count against his FMLA leave. (Pl. Mot. Summ. J. Attach. 7 (Pl. Time Off Report), ECF No. 40-7.) Blackwell used twelve weeks of FMLA-protected leave through November 1, 2015.[2] Blackwell

---

[2] Publix's memorandum in support of motion for summary judgment states that Blackwell's FMLA leave expired on October 22, 2015, (Def. Mem. Supp. Mot. Summ. J. 1, 7, ECF No. 45-1) but also appears to agree with Blackwell that his FMLA leave expired on November 1, 2015. (Id. at 8, 18, ECF No. 45-1.) However, this does not appear to be a material issue as there is no dispute that Blackwell received all of the FMLA leave to which he was entitled. Accordingly, the court utilizes November 1, 2015, as the date Blackwell's FMLA leave ended.

3

acknowledges that he received the full twelve-week period of leave mandated by the FMLA. (Pl. Mem. Supp. Mot. Summ. J. 2, ECF No. 40-1.)

Around the end of September or beginning of October 2015, during Blackwell's FMLA leave, store manager Kevin Lieberenz ("Lieberenz") left a voice mail for Blackwell saying that he needed the store keys and that he had heard from another employee that Blackwell was not returning to work. (Def. Mot. Summ. J. Ex. A (Pl. Dep. 110-23), ECF No. 45-2.) Blackwell alleges that Lieberenz was "hollering" in the voice mail, so he immediately called Lieberenz back to let him know the voice mail was unprofessional and that Lieberenz did not seem concerned about his injury. (Id. Ex. A (Pl. Dep. 110-23), ECF No. 45-2.) According to Blackwell, Lieberenz "got all hotheaded" and hung up, and Blackwell called him back. (Id. Ex. A (Pl. Dep. 110-23), ECF No. 45-2.) Blackwell claims that he asked Lieberenz if he would check Blackwell's FMLA time, and Lieberenz responded that he was "not worried about it," hanging up again. (Id. Ex. A (Pl. Dep. 110-23), ECF No. 45-2.)

During Blackwell's FMLA leave, Publix mailed Blackwell a series of certified letters to notify him of the amount of time he had remaining for FMLA leave:

1. In a letter dated July 22, 2015, Publix informed Blackwell that he had 11.36 weeks of leave remaining;

2. In a letter dated August 21, 2015, Publix informed Blackwell that he had 8.56 weeks of leave remaining;

3. In a letter dated September 22, 2015, Publix informed Blackwell that he had 4.56 weeks of leave remaining;

4. In a letter dated October 13, 2015, Publix informed Blackwell that he had 1.67 weeks of leave remaining;

4

     5. In a letter dated October 21, 2015, Publix informed Blackwell that he had .44 weeks of leave remaining; and

     6. In a letter dated October 28, 2015, Publix left the weeks remaining space blank and included a Notice of Rights and Obligations.

(Id. Ex. A (Exs. 12-13, 15, 17-19), ECF No. 45-2.)

Lieberenz testified that typically when a manager was on FMLA leave, the manager would continue to be scheduled for work, and then the scheduled time would be excused in the company's system, "boot[ing] them off the schedule." (Pl. Mot. Summ. J. Ex. 3 (Lieberenz Dep. 55), ECF No. 40-3.) When the doctor's note expired, the employee would be scheduled to work for the following week. (Id. Ex. 3 (Lieberenz Dep. 56-57), ECF No. 40-3.) Lieberenz was uncertain whether Blackwell was placed back on the work schedule after the expiration of his FMLA leave on November 1, 2015. (Id. Ex. 3 (Lieberenz Dep. 74-75), ECF No. 40-3.)

Blackwell testified to his procedure in returning to work after FMLA leave as follows:

    Q. You've been on FMLA leave before. What was your understanding of what you were supposed to do when you were able to come back to work?

    A. What do you mean? I did the same thing I did this time; they put me on the schedule and I came back.

    Q. You just waited for them to put you on the schedule?

    A. I called, and they tell me what time – when to come back, my schedule, and I come back.

(Def. Mot. Summ. J. Ex. A (Pl. Dep. 133), ECF No. 45-2.) Further, Blackwell claims that he had previously taken FMLA leave when he had cancer in 2011. (Id. Ex. A (Pl. Dep. 14, 68), ECF No. 45-2.) When asked how he had returned to work, Blackwell replied, "Same thing, called . . . . And he gave me my schedule." (Id. Ex. A (Pl. Dep. 14), ECF No. 45-2.)

5

Blackwell testified that he was able to check his work schedule from home. (Id. Ex. A (Pl. Dep. 125-26), ECF No. 45-2.) Blackwell claims that when he checked the schedule around November 1, 2015, he noticed that he was not scheduled to work. (Id. Ex. A (Pl. Dep. 125-26), ECF No. 45-2.) In mid-November, Blackwell claims that he called the store and talked to an employee named "Paul" in customer service and asked "what was the problem." (Def. Mot. Summ. J. Ex. A (Pl. Dep. 126), ECF No. 45-2.) Blackwell alleges that Paul attempted to transfer his call to Lieberenz, but he never got an answer. (Id. Ex. A (Pl. Dep. 126), ECF No. 45-2.) Blackwell testified that he waited approximately two weeks after the expiration of his FMLA leave to call the store because he "physically wasn't . . . 100 percent, so I was still waiting to get on the schedule." (Id. Ex. A (Pl. Dep. 128), ECF No. 45-2.) Further, Blackwell claims he later made other attempts to reach Lieberenz by telephone, but was unable to do so. (Id. Ex. A (Pl. Dep. 126-28, 134-35, 140-41), ECF No. 45-2.) Blackwell did not attempt to visit the store after November 1, 2015, send any written communication to Publix, or attempt to meet Lieberenz in person. (Id. Ex. A (Pl. Dep. 126-27), ECF No. 45-2.)

On November 19, 2015, Publix district manager Walter Laird ("Laird") submitted a request to fill Blackwell's grocery manager position because Blackwell was "still on Disability Leave and not expected back." (Pl. Mot. Summ. J. Ex. 10 (Pittman-Laird Emails), ECF No. 40-10.) The request was approved. (Id. Ex. 10 (Pittman-Laird Emails), ECF No. 40-10.) However, Blackwell's position was not filled until February 2016. (Def. Mot. Summ. J. Ex. C (White Dep. 56), ECF No. 45-4.) During Blackwell's FMLA leave, his position was covered by Lieberenz and assistant store manager, Jason White ("White"). (Pl. Mot. Summ. J. Ex. 3 (Lieberenz Dep. 55-56), ECF No. 40-3.)

Lieberenz sent a certified letter to Blackwell dated November 30, 2015, stating as follows:

> Hope this letter is finding you in better health. I have not heard from you or received any further documentation requiring you to be out of work[] [s]ince your last doctor's [note] dated 10/03/2015 putting you out of work until 11/01/2015. So I am sending this letter to find out if you are planning to return to Publix. I will need to hear from you by receipt of this letter or I will consider you no longer employed by Publix Supermarkets.

(Def. Mot. Summ. J. Ex. A (Ex. 21), ECF No. 45-2.) The certified mail receipt indicates that the letter was delivered on December 2, 2015. (Id. Ex. A (Ex. 21), ECF No. 45-2.) However, Blackwell testified that he had never seen the letter and that the signature on the card was not his. (Id. Ex. A (Pl. Dep. 130-32), ECF No. 45-2.) The certified letter was sent to Blackwell's home, the same address where prior leave communications had been received. (Id. Ex. A (Pl. Dep. 130-32), ECF No. 45-2.)

In early January 2016, Blackwell called White, the assistant store manager. (Id. Ex. A (Pl. Dep. 141), ECF No. 45-2.) Blackwell testified that White stated that Blackwell was on "corporate leave until February the something." (Def. Mot. Summ. J. Ex. A (Pl. Dep. 141), ECF No. 45-2.) Blackwell claims he had never heard of corporate leave and asked why he would be on corporate leave "when [he] told him [that he] could return a long time ago." (Id. Ex. A (Pl. Dep. 141), ECF No. 45-2.) According to White, Blackwell called and asked why he was still listed on Publix's payroll. (Id. Ex. C (White Dep. 53), ECF No. 45-4.) White responded that Blackwell's FMLA leave had been exhausted, that Blackwell had been placed on disability leave to cover his continued absences, and that once his disability leave had expired, Blackwell would have "30 days before he was separated unless he wanted to go ahead and give his resignation to

7

[White]."  (Id. Ex. C (White Dep. 53), ECF No. 45-4.)  White claims Blackwell said "okay" and disconnected, without giving White the chance to ask when Blackwell was returning to work.  (Id. Ex. C (White Dep. 66), ECF No. 45-4.)  White told Lieberenz about this call.  (Def. Mot. Summ. J. Ex. C (White Dep. 66), ECF No. 45-4.)

Blackwell did not request disability leave or submit any medical documentation demonstrating a need for such leave, but White testified that they "took it upon [them]selves to put [Blackwell] on disability leave to keep him still employed" after they did not hear back from him after the November 30, 2015 letter.  (Id. Ex. C (White Dep. 54-55), ECF No. 45-4); (Pl. Mot. Summ. J. Attach. 6 (Pl. Aff. ¶¶ 14-17), ECF No. 40-6.)  White did not recall whether Blackwell was placed on the schedule to work after the expiration of his doctor's note.  (Def. Mot. Summ. J. Ex. C (White Dep. 55-56), ECF No. 45-4.)  Publix's disability leave policy provides that requests for disability leave require "a properly completed Medical Certification Form (Non-Military) or appropriate medical documentation."  (Pl. Mot. Summ. J. Attach. 9 (Def. Employee Handbook Disability Leave Policy), ECF No. 40-9.)  Further, Publix's leave of absence policy provides that employees "should maintain contact with [their] manager while out on leave.  Maintaining contact benefits you and your manager because you both remain up to date regarding when you're able, and expected, to return to work."  (Def. Mot. Summ. J. Ex. A (Ex. 4), ECF No. 45-2.)

On February 4, 2016, Publix terminated Blackwell's employment through voluntary resignation.  (Id. Ex. B (Exs. 6-7), ECF No. 45-3.)  Blackwell claims that he did not receive any written notice that his employment was terminated or documentation about his right to continue

8

health insurance.  (Id. Ex. A (Pl. Dep. 104), ECF No. 45-2 & Pl. Mot. Summ. J. Attach. 6 (Pl. Aff. ¶ 16), ECF No. 40-6.)

Blackwell filed the instant suit alleging an interference claim and a retaliation claim under the FMLA with the Greenville County, South Carolina Court of Common Pleas on August 1, 2016.  (Compl., ECF No. 1-1.)  Publix removed this action to this court on August 31, 2016.  (Not. Removal, ECF No. 1.)  Magistrate Judge McDonald issued his Report and Recommendation on January 11, 2018, recommending denying Blackwell's first motion for partial summary judgment, and finding Blackwell's second motion for partial summary judgment moot.  (R&R, generally, ECF No. 56.)  Further, Magistrate Judge McDonald recommends granting Publix's motion for summary judgment because no reasonable jury could conclude that Publix interfered with Blackwell's rights under the FMLA by failing to restore him to his position, and Blackwell failed to meet his burden of showing that Publix's legitimate, nondiscriminatory reason for terminating him was a pretext for retaliation.  (Id., ECF No. 56.) Blackwell filed objections on January 25, 2018.  (Objs., ECF No. 57.)  Publix replied on February 8, 2018.  (Reply Objs., ECF No. 58.)  Blackwell filed a reply to Publix's response to Blackwell's objections on February 14, 2018.  (Pl. Reply, ECF No. 62.)  Publix filed a sur-reply on February 19, 2018.  (Def. Sur-Reply, ECF No. 63.)  This matter is now ripe for consideration.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence

of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Objections to the Report and Recommendation

Blackwell filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court finds that many of Blackwell's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his claims. However, the court was able to glean two specific objections.[3] First, Blackwell objects to the magistrate judge's finding that Publix did not unlawfully interfere with Blackwell's FMLA rights by failing to reinstate him to his position. (Objs. 6-12, ECF No. 57.) Second, Blackwell objects to the magistrate judge's finding that Blackwell failed to meet his burden of showing that Publix's explanation for his termination from employment was pretextual. (Id. at 12-19, ECF No. 57.)

### C. FMLA Interference Claim

Blackwell and Publix have filed cross-motions for summary judgment on the FMLA interference cause of action. (Pl. Mot. Summ. J., ECF No. 40 & Def. Mot. Summ. J., ECF No. 45.) The United States Court of Appeals for the Fourth Circuit provides:

> When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion.

Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted).

The FMLA entitles eligible employees to twelve (12) weeks of leave during a twelve (12) month period for, among other reasons, a serious health condition which prevents an

---

[3] Blackwell objects that the magistrate judge considered facts regarding unrelated sexual harassment and theft allegations that are irrelevant to the claims before the court. The court has not considered or adopted these unrelated facts.

11

employee from performing employment functions. See 29 U.S.C. § 2612(a)(1)(D). At the conclusion of FMLA leave, "an employee has the right to reinstatement to his or her original position or an equivalent post." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 301 (4th Cir. 2016) (citing 29 U.S.C. § 2614(a)(1)). Further, the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" protected by the FMLA, including reinstatement. 29 U.S.C. § 2615(a)(1). An employer is not prohibited from "requiring an employee on [FMLA] leave . . . to report periodically to the employer on the status and intention of the employee to return to work." 29 U.S.C. § 2614(a)(5).

To establish a claim that an employer interfered with an employees rights under FMLA, an employee must demonstrate that: "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cnty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)). Further,

> [a]n employee has no greater right to reinstatement . . . than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

29 C.F.R. § 825.216(a). "An employer may require an employee on FMLA leave to report periodically on the employee's status and intent to return to work . . . ." 29 C.F.R. § 825.311(a). "If an employee gives unequivocal notice of intent not to return to work," the employer's obligation to restore the employee to his position or an equivalent position ceases. 29 C.F.R. § 825.311(b). Further, "an employer's obligation to restore the employee to the same or

equivalent employment or to provide health benefits ceases *if and when* the employee fails to return from leave or continues on leave after exhausting his FMLA leave entitlement." Wiggins v. DaVita Tidewater, LLC, 451 F. Supp. 2d 789, 802 (E.D. Va. 2006) (citing 29 C.F.R. § 825.209(f)).

Blackwell objects to the magistrate judge's recommendation to grant summary judgment on his interference claim because viewing the evidence in the light most favorable to him, he has established that Publix interfered with his FMLA rights by refusing to allow him to return to work. (Objs. 6-12, ECF No. 57.) Specifically, Blackwell argues that he complied with Publix's reporting requirements. (Id., ECF No. 57.) However, Blackwell's objection is without merit.

Publix's leave of absence policy provides that: "You should maintain contact with your manager while out on leave. Maintaining contact benefits you and your manager because you both remain up to date regarding when you're able, and expected, to return to work." (Def. Mot. Summ. J. Ex. A (Ex. 4), ECF No. 45-2.) The record is clear that Blackwell's last communication with Publix before the expiration of his FMLA leave was around the beginning of October 2015, when he talked with Lieberenz and his mother delivered a doctor's note providing that he would be out on leave until November 1, 2015. (Id. Ex. A (Pl. Dep. 113, 124-25, Ex. 16), ECF No. 45-2.)

After the expiration of Blackwell's FMLA leave on November 1, 2015, it is undisputed that he did not attempt to contact Publix until mid-November. (Id. Ex. A (Pl. Dep. 125-28), ECF No. 45-2.) The record shows that Blackwell previously took FMLA leave without incident in 2011 and in July-August 2015. (Id. Ex. A (Pl. Dep. 14, 68, 133), ECF No. 45-2.) Upon the expiration of his prior FMLA leaves, Blackwell contacted Publix and asked to be placed back on

13

the work schedule.  (Id. Ex. A (Pl. Dep. 133), ECF No. 45-2.)  However, during the instant FMLA leave at issue, Blackwell waited approximately two weeks after the expiration of his FMLA leave to contact Publix about returning to the schedule.  (Def. Mot. Summ. J. Ex. A (Pl. Dep. 125-28), ECF No. 45-2.)  During this telephone call, Blackwell was not able to contact Lieberenz, his manager, and only talked with "Paul" in customer service.  (Id. Ex. A (Pl. Dep. 11, 125-28), ECF No. 45-2.)  After this telephone call, Blackwell did not attempt to visit the store, send any written communication to Publix, or attempt to meet Lieberenz in person.  (Id. Ex. A (Pl. Dep. 126-27), ECF No. 45-2.)  Further, the record provides that Blackwell did not communicate with store management until January 2016, when he called White, the assistant store manager.  (Id. Ex. A (Pl. Dep. 140-41), ECF No. 45-2;) (Id. Ex. C (White Dep. 64-67), ECF No. 45-4.)  When Blackwell spoke with White in January 2016, he did not discuss or ask about returning to work.  (Def. Mot. Summ. J. Ex. C (White Dep. 64-67), ECF No. 45-4.)  Based on the foregoing, no genuine issues of material fact exist regarding Blackwell's compliance with Publix's leave of absence policy to maintain contact with a manager because Blackwell failed to communicate during the extended period of time.

Further, Blackwell argues that Publix interfered with his FMLA rights after the expiration of his FMLA leave, by not restoring him to his position.  (Objs. 9-11, ECF No. 57.)  However, having found Blackwell did not comply with Publix's leave of absence policy, Publix no longer had an obligation to restore Blackwell to his original position.  See Woods v. DaimlerChrysler Corp., 409 F.3d 984, 991 (8th Cir. 2005) ("Employees who fail to comply with legitimate reporting requirements set by their employers are not entitled to reinstatement . . . ."); Miller v. Personal-Touch of Va., Inc., 342 F. Supp. 2d 499, 515 (E.D. Va. 2004) (finding that

the employer had no responsibility to restore plaintiff to her prior position following the expiration of the twelve-week period), aff'd No. 05-1461, 2005 WL 2996432 (4th Cir. Nov. 9, 2005) (unpublished); Wright v. Stark Truss Co., Inc., C.A. No. 2:10-2427-RMG-BM, 2012 WL 3029638, at *12 (D.S.C. May 10, 2012) (unpublished) (noting that "an employer may terminate an employee who fails to return to work after the expiration of the FMLA period"); Wallace v. Rite Aid Corp., C.A. No. PJM 10-2190, 2012 WL 366896, at *3 (D. Md. Feb. 1, 2012) (unpublished) (finding employer's decision to terminate an employee who did not show up for work or contact employer after the expiration of FMLA leave did not interfere with employee's rights under the FMLA). Based on the foregoing, this claim fails because no genuine issues of material fact exist that Publix interfered with Blackwell's rights under the FMLA by failing to restore him to his position. Therefore, Publix is entitled to summary judgment on Blackwell's interference claim.

### D. FMLA Retaliation Claim

Blackwell objects that the magistrate judge erred in finding that he failed to demonstrate that a reasonable jury could find Publix's stated reason for terminating him was pretextual. The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2); see also 29 C.F.R. § 825.220(c) (noting that "employers cannot use the taking of FMLA leave as a negative factor in employment actions"). "Retaliation claims brought under the FMLA are analogous to those brought under Title VII." Adams, 789 F.3d at 429 (citing Laing v. Fed. Express Corp., 703 F.3d 713, 717 (4th Cir. 2013) & Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006)).

The court analyzes Blackwell's retaliation claim under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). This framework is as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (quoting McDonnell Douglas, 411 U.S. at 802) (internal citations omitted). In satisfying the third step, if the plaintiff is able to show by a preponderance of the evidence that the defendant's purported reason is a pretext, then the "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

Blackwell "must prove three elements to establish a prima facie case of retaliation: (1) [he] engaged in a protected activity; (2) [his] employer took an adverse employment action against [him]; and (3) there was a causal link between the two events." Adams, 789 F.3d at 429 (internal quotation marks and citation omitted). "If the defendant advances a lawful explanation for the alleged retaliatory action, the plaintiff must demonstrate that the defendant's reason for taking the adverse employment action was pretextual." Id. (citations omitted). A retaliation claim under the FMLA differs from an interference claim in that employer intent is relevant to the retaliation claim. Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016).

16

Assuming, without deciding, that Blackwell has established a prima face case of retaliation,[4] Publix has offered a legitimate, non-discriminatory reason for Blackwell's termination. Publix avers that Blackwell was terminated because he failed to comply with Publix's reporting requirements and failed to return to work upon the expiration of his FMLA leave. (Def. Mem. Supp. Mot. Summ. J. 16, ECF No. 45-1.) Therefore, the burden shifts back to Blackwell to prove that the termination was a pretext for FMLA retaliation. See Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001).

Blackwell alleges that he has offered sufficient evidence of pretext for the following reasons: (1) Publix deviated from its normal business practices by placing him on disability leave; (2) Publix characterized his termination as a resignation; and (3) Publix failed to notify Blackwell of his termination. (Objs. 12-18, ECF No. 57.) None of Blackwell's arguments establish sufficient evidence of pretext for Publix's legitimate, nondiscriminatory reason for his termination.

First, Blackwell argues that Publix deviated from its normal business practices by placing him on disability leave. (Id. at 12-16, ECF No. 57.) However, Blackwell's failure to identify a comparator undermines establishing that Publix deviated from its normal business practices by placing him on disability leave. See Laing v. Fed. Exp. Corp., 703 F.3d 713, 719-20 (4th Cir. 2013); Williams v. Johnson & Johnson, Inc., No. 2:13-cv-304-RMG, 2014 WL 5106890, at *14 (D.S.C. Oct. 10, 2014) (unpublished) ("Plaintiff could not provide the name of another employee who was treated differently from her or anyone that ever received preferential

---

[4] See Lerner v. Shinseki, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011) (unpublished).

treatment. Thus, Plaintiff has provided no evidence that she was treated less favorably than similarly situated employees. The lack of comparator evidence further supports the entry of summary judgment.").

Blackwell claims that Laird's testimony that he was not aware of any Publix employee being placed on disability leave without requesting it or submitting medical documentation establishes a deviation from Publix's normal business practices. (Objs. 13-14, ECF No. 57.) However, Laird does not manage disability leave as a district manager, and provides conflicting testimony in stating that placing Blackwell on disability leave was "normal course." (Def. Mot. Summ. J. Ex. D (Laird Dep. 32), ECF No. 45-5.) Moreover, White claims that Publix's intent for placing Blackwell on disability leave was to retain Blackwell as an employee when he did not respond to the November 30, 2015 letter. (Def. Mot. Summ. J. Ex. C (White Dep. 54-55), ECF No. 45-4); see Wiggins, 451 F. Supp. 2d at 802 (finding employer did not interfere with employee's rights under FMLA where she was allowed to stay out of work for 25 weeks and never contacted employer about returning to work or requested an additional leave of absence).

Second, Blackwell alleges that Publix's designation of his termination as a resignation is proof of pretext. (Objs. 16-17, ECF No. 57.) However, Lieberenz submits that the termination form requires that job abandonment be characterized as a resignation. (Def. Mot. Summ. J. Ex. B (Lieberenz Dep. 87-89), ECF No. 45-3.) In addition, the resignation document states that Blackwell "went out on FMLA and never returned to work." (Id. Ex. B (Exs. 6-7), ECF No. 45-3.) Blackwell has failed to show that Publix's characterization of his termination from employment as a resignation is evidence of pretext.

Lastly, Blackwell argues that Publix's failure to notify him of his termination is proof of pretext. (Objs. 17-18, ECF No. 57.) The record does not support any retaliatory intent by Publix. Publix mailed Blackwell a series of certified letters to notify him of the amount of FMLA leave he had remaining. (Def. Mot. Summ. J. Ex. A (Exs. 12, 13, 15, 17-19), ECF No. 45-2.) In addition, Lieberenz sent Blackwell a certified letter dated November 30, 2015 (and delivered December 2, 2015), providing that he needed to hear from Blackwell or he would be considered no longer employed by Publix. (Id. Ex. A (Ex. 21), ECF No. 45-2.) The record demonstrates the opposite of a retaliatory motive in that Publix retained Blackwell as an employee for an additional three months beyond his FMLA leave. See Moticka v. Weck Closure Sys., No. 05-1231, 2006 WL 1526532, at *8 (4th Cir. 2006) (unpublished) (noting that "the inference of retaliatory motive is undercut . . . by the favorable treatment [the plaintiff] received [including, leave extended beyond the FMLA's requirements] until her termination").

After review and for the reasons set forth above, a reasonable jury could not infer from the evidence that Blackwell's FMLA request was a motivating factor in Publix's decision to terminate him. Publix is entitled to summary judgment on Blackwell's retaliation claim. Therefore, Publix's motion for summary judgment is granted. Based on the foregoing, the court adopts the portions of Magistrate Judge McDonald's Report and Recommendation to the extent it is consistent with this opinion.[5]

---

[5] Blackwell's motion for partial summary judgment as to Publix's after-acquired evidence defense is moot because the court grants Publix's motion for summary judgment.

Therefore, it is

**ORDERED** that Blackwell's motion for partial summary judgment, docket number 40, is denied. It is further

**ORDERED** that Blackwell's motion for partial summary judgment as to the after-acquired evidence defense, docket number 43, is dismissed as moot. It is further

**ORDERED** that Publix's motion for summary judgment, docket number 45, is granted.

**IT IS SO ORDERED**.

                                          s/Henry M. Herlong, Jr.
                                          Senior United States District Judge

Greenville, South Carolina
February 20, 2018